**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| David Membrila,<br><br>               Plaintiff,<br><br>v.<br><br>Michael J. Astrue, Commissioner, Social Security Administration,<br><br>               Defendant. | No. CV-12-01565--DGC<br><br>**ORDER** |

Plaintiff David Membrila applied for disability and supplemental security income benefits pursuant to Titles II and XVI of the Social Security Act on August 29, 2008. Tr. at 22. Plaintiff claimed a period of disability beginning April 16, 2008. *Id.* The Social Security Administration ("SSA") denied Plaintiff's applications on initial review on October 22, 2008, and on reconsideration on February 20, 2009. *Id.* Plaintiff requested and obtained a hearing before Administrative Law Judge ("ALJ") M. Kathleen Gavin on May 6, 2010. *Id.* The ALJ determined that Plaintiff was not disabled under sections 216(i), 223(d), and 1614(a)(3)(A) of the Social Security Act. Tr. at 36. The Appeals Council denied review on May 22, 2012, making the denial of benefits the final decision of the Commissioner for purposes of judicial review. Tr. at 1-5. Plaintiff filed a motion to vacate on March 15, 2013. Doc. 13. The motion has been fully briefed. Docs. 16, 20. For the reasons that follow, the Court will grant the motion.

**I.    Standard of Review.**

Defendant's decision to deny benefits will be vacated "only if it is not supported

by substantial evidence or is based on legal error." *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 882 (9th Cir. 2006). "'Substantial evidence' means more than a mere scintilla, but less than a preponderance, i.e., such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* In determining whether the decision is supported by substantial evidence, the Court must consider the record as a whole, weighing both the evidence that supports the decision and the evidence that detracts from it. *Reddick v. Chater*, 157 F.3d 715, 720 (9th Cir. 1998). If there is sufficient evidence to support the Commissioner's determination, the Court cannot substitute its own determination. *See Young v. Sullivan*, 911 F.2d 180, 184 (9th Cir. 1990).

**II.    Analysis.**

For purposes of Social Security benefits determinations, a disability is

> the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.

20 C.F.R. § 404.1505.

Determining whether a claimant is disabled involves a sequential five-step evaluation. The claimant must show (1) he is not currently engaged in substantial gainful employment, (2) he has a severe physical or mental impairment, and (3) the impairment meets or equals a listed impairment, or (4) his residual functional capacity ("RFC") precludes him from performing his past work.[1] If at any step the Commission determines that a claimant is or is not disabled, the analysis ends; otherwise, it proceeds to the next step. If the claimant establishes his burden through step 4, the Commissioner must find the claimant disabled unless he finds that the claimant can make an adjustment to other work. The Commissioner bears the burden at step 5 of showing that the claimant has the RFC to perform other work that exists in substantial numbers in the national economy.

---

[1] RFC is the most a claimant can do with the limitations caused by his impairments. *See Rodriguez v. Bowen*, 876 F.2d 759, 762 (9th Cir. 1989); 20 C.F.R. § 416.945(a); SSR 96-8p, 1996 WL 374184 (July 2, 1996).

*See* 20 C.F.R. § 404.1520(a)(4)(i)-(v).

The ALJ found at step 1 that Plaintiff had not worked since his alleged onset of disability on April 16, 2008. Tr. at 24. At step 2, the ALJ found that Plaintiff suffered from the following severe impairments: degenerative disc disease of the lumbar spine, bilateral knee arthritis, depression, anxiety, and a history of substance abuse in remission. *Id.* The ALJ found at step 3 that none of these impairments or combination thereof met or medically equaled one of the listed impairments. Tr. at 28. The ALJ found that Plaintiff had the RFC to perform sedentary work limited to simple work with no public contact. Tr. at 29. The ALJ found at step 4 that Plaintiff would not be able to perform his past relevant work as a construction laborer, glass installer, or trash collection supervisor. Tr. at 34. The ALJ found at step 5 that Plaintiff was capable of adjusting to other work that existed in significant numbers in the economy. *Id.* The ALJ therefore concluded that Plaintiff was not disabled. Tr. at 35.

Plaintiff argues that the ALJ's determination was based on legal error because (1) the ALJ did not provide a function-by-function assessment of his RFC, (2) the ALJ failed properly to weigh medical source evidence, and (3) the ALJ failed properly to weigh Plaintiff's subjective complaints.

**A.     The RFC Assessment.**

The ALJ determined that "the claimant has the residual functional capacity to perform work at the sedentary exertional level and is limited to simple work with no public contact." Tr. at 29. Plaintiff argues that this finding was legal error because the ALJ was required to provide a function-by-function assessment of Plaintiff's RFC and not express it in terms of a "category" of work. Doc. 13 at 4. Plaintiff relies on Social Security Ruling 96-8p, 1996 WL 374184, (July 2, 1996), which states:

> The RFC assessment is a function-by-function assessment based upon all of the relevant evidence of an individual's ability to do work-related activities. At step 4 of the sequential evaluation process, the RFC must not be expressed initially in terms of the exertional categories of "sedentary," "light," "medium," "heavy," and "very heavy" work because the first consideration at this step is whether the individual can do past relevant work as he or she actually performed it.

SSR 96-8p, 1996 WL 374184, at *3 (July 2, 1996). [2] This ruling clarifies that at step 4 the RFC must look to whether a claimant can do his or her past relevant work "as he or she actually performed it," and, at step 5, when looking to whether the claimant can do other work as it is generally performed in the national economy, the RFC must be expressed in terms of an exertional category. *Id.* The more tailored assessment at step 4 is required because a claimant may be capable of doing all that is required for his or her past work and thus not be disabled even if he or she is not capable of all the demands generally required of work at the same exertional level. *Id.* ("It is very important to consider first whether the individual can still do past relevant work as he or she *actually* performed it because individual jobs within an occupational category as performed for particular employers may not entail all of the requirements of the exertional level indicated for that category in the *Dictionary of Occupational Titles* and its related volumes.").

The ALJ did not follow this requirement when assessing whether Plaintiff could do his past relevant work. Tr. at 34. Rather, she based her finding at step 4 on answers the vocational expert gave based solely on the *Dictionary of Occupational Titles'* categorization of Plaintiff's past occupations as light, medium, and heavy work compared to the RFC that Plaintiff could do sedentary work with certain limitations. *Id.* Although it was procedural error for the ALJ not to assess Plaintiff's ability to do his past relevant work as actually performed, Plaintiff does not argue that the ALJ's finding that he could not do his past relevant work was incorrect. Moreover, even if Plaintiff's past relevant work did not require him to perform all the functions of their given exertional levels, the ALJ's finding that Plaintiff had the RFC to do sedentary work would almost certainly preclude his past relevant work, all of which required physical exertion well above the

---

[2] Social Security Rulings are binding on ALJs. *See* 20 C.F.R. § 402.35(b) (SSRs "are binding on all components of the Social Security Administration"); *Quang Van Han v. Bowen*, 882 F.2d 1453, 1457 n.6 (9th Cir.1989) (SSRs "are binding on ALJs"); *Paulson v. Bowen*, 836 F.2d 1249, 1252 n.2 (9th Cir. 1988) (same).

sedentary level, meaning the result at step 4 would be the same.[3]

The ALJ complied with the requirement at step 5 that she express Plaintiff's RFC in terms of the exertional categories used to assess an individual's ability to do work as generally performed in the national economy. Tr. at 29. Before concluding that Plaintiff was able to do sedentary work, however, she was required to find that Plaintiff was "able to perform substantially all of the exertional and nonexertional functions required in work at that level." SSR 96-8p, 1996 WL 374184, at *3. The ALJ did this by weighing the opinions of treating physician Dr. Holly Rooney, consultative examiners Drs. Shahedul Islam and Jeri Hassman, and state agency physician Dr. Ernest Griffith as to Plaintiff's physical functioning, and consultative psychological examiner Dr. Steven Hirdes and state agency psychologist Donna DeFelice as to Plaintiff's mental functioning. Tr. at 32-33. In reaching her RFC assessment, the ALJ gave "significant" weight to the physical functioning assessments of Dr. Griffith – that Plaintiff could lift and/or carry 20 pounds occasionally, 10 pounds frequently, stand and/or sit for at least two hours and sit for six hours in a typical 8 hour workday, and could occasionally climb, balance, kneel, and crouch and frequently crawl – and "substantial" weight to the mental functioning assessments of Dr. DeFelice that Plaintiff's adaptability is adequate for routine employment. *Id.*

Plaintiff argues that the ALJ failed adequately to account for conflicting evidence, but these arguments go to whether the ALJ gave proper weight to the medical source evidence and Plaintiff's subjective complaints, not to whether she assessed Plaintiff's functional capacities before arriving at an RFC.

**B.     Medical Source Opinion Evidence.**

Plaintiff's primary care physician, Dr. Rooney, completed a medical assessment of his ability to do work-related physical activities on January 21, 2009, in which she

---

[3] Although the job of trash collection supervisor was categorized as light work – only one step above sedentary – Plaintiff testified that the job as actually performed required him to move recycling bins weighing 200 pounds or more. Tr. at 64-65. Plaintiff's other jobs were categorized as either medium or heavy work.

checked that Plaintiff's degree of limitation was moderately severe. Tr. at 447. She completed a second assessment on May 4, 2010, in which she checked that Plaintiff's degree of limitation varied between moderate and moderately severe. Tr. at 525. In both assessments, Dr. Rooney opined that Plaintiff could sit, stand, or walk a total of less than two hours each in a typical 8 hour workday, could lift and carry less than 10 pounds, could not bend, crawl, climb, reach, stoop, balance, crouch, or kneel, and was further limited in his ability to sustain work for 8 hours a day five days a week by nausea from medications (2009) and anxiety, depression, and fatigue due to chronic pain (2010). Tr. at 446-47, 524-25. When presented with Dr. Rooney's assessment of Plaintiff's physical limitations at the hearing, the vocational expert stated that Plaintiff could do less than full time work. Tr. at 63.

Plaintiff argues that Dr. Rooney's opinion is entitled to controlling weight because it was supported by his treatment notes and clinical findings and is not inconsistent with other substantial evidence on the record. Doc. 13 at 12. Plaintiff further argues that even if Dr. Rooney's opinion is found to be in conflict with other medical opinions due to her more limited assessment of Plaintiff's functional capacities, it is still entitled to deference, and the ALJ failed to set forth specific, legitimate reasons for giving greater weight to the opinion of the non-examining state agency physician, Dr. Griffith. *Id.* at 12-13. The Court agrees.

"The medical opinion of a claimant's treating physician is entitled to 'special weight.'" *Rodriguez v. Bowen*, 876 F.2d 759, 762 (9th Cir. 1989) (quoting *Embrey v. Bowen*, 849 F.2d 418, 421 (9th Cir. 1988)). "The rationale for giving the treating physician's opinion special weight is that he is employed to cure and has a greater opportunity to know and observe the patient as an individual." *McCallister v. Sullivan*, 888 F.2d 599, 602 (9th Cir. 1989) (citing *Winans v. Bowen*, 853 F.2d 643, 647 (9th Cir. 1987)). "If a treating physician's opinion is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record, [it will be given] controlling weight." *Orn,* 495

F.3d at 631 (citations omitted).

Even when an ALJ finds that a treating physician's opinion is not entitled to controlling weight, that does not mean "'that the opinion should be rejected.'" *Id.* at 632 (quoting S.S.R. 96-2p at 4 (Cum. Ed.1996), *available at* 61 Fed. Reg. 34,490, 34,491 (July 2, 1996)). According to the Social Security Administration, "'[i]n many cases, a treating source's medical opinion will be *entitled to the greatest weight and should be adopted, even if* it does not meet the test for controlling weight.'" *Id.* (quoting S.S.R. 96-2p at 4) (emphasis added). An ALJ may reject "the treating physician's opinion, but only by setting forth 'specific, legitimate reasons for doing so, and this decision must itself be based on substantial evidence.'" *Rodriguez*, 876 F.2d at 762 (quoting *Cotton v. Bowen*, 799 F.2d 1403, 1408 (1986)). The ALJ can meet this burden "by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." *Reddick*, 157 F.3d at 725.

The ALJ stated that she did not give Dr. Rooney's opinion controlling weight because Dr. Rooney's assessment of Plaintiff's functional abilities precluded his doing even sedentary work, and "there is little support in Dr. Rooney's contemporaneous treating notes for such a restrictive assessment." Tr. at 32. These notes, she maintained, primarily summarized Plaintiff's subjective complaints, diagnoses, and treatment, but did not present objective clinical and laboratory diagnostic findings to support Dr. Rooney's opinion. *Id.*

Plaintiff argues that Dr. Rooney's opinion is well-supported by medically acceptable objective evidence. Plaintiff relies, in part, on reports sent to Dr. Rooney from orthopedic surgeon Dr. Jody Dagget supporting Plaintiff's left knee complaints. Doc. 13 at 7-9. Dr. Dagget noted that at age 14 Plaintiff suffered a femur fracture due to a benign tumor and underwent a bone graft in which he ended up with a bony overgrowth, slight lengthening of the left leg, and his left knee went into valgus, causing persistent weakness. Tr. 374.[4] She saw Plaintiff in June 2008 when Plaintiff was then 30 years old

---

[4] "Valgus" is defined as "a deformity in which an anatomical part is turned

- 7 -

1  for a recent injury in which his left knee buckled while lifting weights. *Id.* Her
2  examination revealed that he had tenderness and puffiness at the lateral joint line and
3  over the lateral femoral condyle, which she diagnosed as being due to internal
4  derangement, possible medial meniscus tear, and patellofemeral compression secondary
5  to the marked valgus configuration. Tr. at 374-75. As reported to Dr. Rooney, Dr.
6  Dagget performed arthroscopy on Plaintiff's knee on September 2, 2008, in which she
7  ruled out meniscus tear, but found significant lateral compartment arthrosis. Tr. at 380.
8  Dr. Dagget advised Plaintiff that surgery to correct the issue would likely result in his
9  inability to work for a year. *Id.*

10  Plaintiff also relies on reports furnished to Dr. Rooney documenting his spinal
11 impairments. Doc. 13 at 7-11. These include an MRI of the lumbar spine conducted on
12 November 9, 2005, before Plaintiff's claimed onset of disability, in which the examiner
13 noted Plaintiff's history of back pain and a car accident four years prior and found
14 bulging at L3-L4 and L5-S1, and disc herniation with impression upon the thecal sac at
15 L4-L5. Tr. at 251-52. An MRI of the lumbar spine conducted on June 17, 2008 revealed
16 degenerative disc disease most marked at L3-L4 and L4-L5, small central disc extrusions
17 with slight caudal migration of disc material, and associated facet joint arthrosis
18 contributing to mild bilateral L3-L4 and L4-L5 foraminal narrowing. Tr. at 363-64.
19 Plaintiff presented these MRI results to Dr. Jose Mendez during a neurosurgical
20 consultation on August 6, 2008. Tr. at 367-72. Dr. Mendez found that the MRIs showed
21 severe degeneration of L3-L4 and L4-L5. Tr. at 371. He advised Plaintiff that he could
22 consider spinal fusion surgery with a 60% chance of improvement, but his spine was
23 "very worn out" and no surgical or medical treatment would take all of his pain away. *Id.*

24  The ALJ did not make specific findings as to whether the MRIs and other clinical
25 exams furnished to Dr. Rooney and contained in her medical records either supported or
26 failed to support Dr. Rooney's conclusions. Rather, she summarily rejected Dr. Rooney's

---

28  outward away from the midline of the body to an abnormal degree." Merriam-Webster Medical Dictionary, *available at http://www.merriam-webster.com/dictionary/valgus*.

1   assessments as not being based on clinical findings. Tr. at 32. This conclusion conflicts
2   with the fact that Dr. Rooney's treatment notes reference the findings of Drs. Dagget and
3   Mendez and refer to Plaintiff's "known disc herniation" and "lateral compartment
4   arthrosis" documented in the reports. Tr. at 354, 356, 357, 403. Dr. Rooney also attested
5   that the limitations she checked in her functional assessments could "reasonably be
6   expected to result from objective clinical or diagnostic findings which have been
7   documented either by [me] or elsewhere in Claimant's medical records." Tr. at 447, 525.
8   Although the ALJ stated that the less restrictive opinion of Dr. Griffiths was "most
9   consistent with the objective evidence and claimant's exhibited abilities" (Tr. at 32, 33),
10  she did not point to any specific clinical evidence or exhibited abilities to show that Dr.
11  Griffith's opinion was better supported and that Dr. Rooney's assessment was in error.
12  The ALJ's failure to make such findings was legal error. *See, e.g.*, *Rodriguez*, 876 F.2d
13  at 762; *Reddick*, 157 F.3d at 725.

14  The fact that Dr. Rooney based her assessment of Plaintiff's functional limitations
15  in part on Plaintiff's subjective complaints is also not a reason to discredit the opinion of
16  a treating physician. "An ALJ does not provide clear and convincing reasons for
17  rejecting an examining physician's opinion by questioning the credibility of the patient's
18  complaints where the doctor does not discredit those complaints and supports his ultimate
19  opinion with his own observations." *Ryan v. Commr. of Soc. Sec.*, 528 F.3d 1194, 1198
20  (9th Cir. 2008); *see also Green-Younger v. Barnhart*, 335 F.3d 99, 107 (2d Cir. 2003)
21  ("The fact that [a treating physician] also relied on [the claimant's] subjective complaints
22  hardly undermines his opinion as to her functional limitations, as '[a] patient's report of
23  complaints, or history, is an essential diagnostic tool.'") (internal citation omitted). [5] Dr.

---

[5] *Ryan* cited the "clear and convincing standard" that applies where a treating physician's opinion is not contradicted by another doctor. *See Lewis v. Apfel*, 236 F.3d 503, 517 (9th Cir. 2001) ("[A]n ALJ may reject a treating doctor's medical opinion, if no other doctor has contradicted it, only for 'clear and convincing' reasons supported by substantial evidence.") (citing *Reddick*, 157 F.3d at 725). Where, as here, the ALJ points to a contrary medical opinion, the ALJ was to set forth "specific, legitimate reasons" based on "substantial evidence" for rejecting the opinion of Plaintiff's treating physician. *Rodriguez*, 876 F.2d at 762. The ALJ's failure to address the clinical evidence and her summary rejection of Plaintiff's subjective complaints do not meet this standard.

Rooney's notes are replete with references to Plaintiff's pain, the failure of pain medications to provide adequate relief, and Plaintiff's inability to hold a job due to his pain and physical limitations. *See, e.g.*, Tr. at 354 (September 9, 2008 entries discussing need for pain management, job retraining); 355 (August 19, 2008 entry noting back pain with tender points); 357 (May 28, 2008 entry noting that back pain is "especially bad," has been a struggle for ten years, Plaintiff is out of work due to severity of pain, knee regularly giving out); 403 (October 17, 2008 entry noting back pain is a 10/10 in severity). The ALJ was not entitled to reject Dr. Rooney's opinion simply because it relied, in part, on her documentation of these symptoms and complaints.

In summary, the ALJ was required to give controlling weight to the opinion of Plaintiff's treating physician to the extent that it was supported by objective medical evidence and not contradicted by other substantial evidence in the record. Because the ALJ did not discuss the objective medical evidence and only summarily rejected Dr. Rooney's findings based on Plaintiff's subjective complaints, the Court cannot conclude that Dr. Rooney's medical opinion was not sufficiently supported. Dr. Griffith's less restrictive functional assessment shows that Dr. Rooney's opinion was at least partially contradicted by that of another doctor, but this alone is not a reason to discredit her opinion or to fail to give it controlling weight. The ALJ was required to set out a summary of the facts and conflicting evidence supporting Dr. Griffith's opinion before she could rely on it as "substantial evidence" sufficient to trump the opinion of a treating physician. *Reddick*, 157 F.3d at 725. The ALJ did not do this. Because the ALJ did not provide adequate reasons for failing to give Dr. Rooney's opinion controlling weight, her rejection of that opinion was legal error.

### C. Plaintiff's Symptom Testimony.

Plaintiff testified at the hearing on May 26, 2010 that he cannot work due to pain and loss of mobility in his back and down his legs that has gotten worse over a period of seven to ten years. Tr. at 52. Plaintiff described his pain level as a 9 or 10 without medication and a 7 or 8 with medication. *Id.* He previously received injections in his

1  back that helped alleviate the pain for up to 6 months, but those stopped working. Tr. at
2  52-53.  As a result, he began taking increased pain medication as well as medications for
3  anxiety and depression that cause dizziness and fatigue.  *Id.* at 53.  Plaintiff testified that
4  he has also lost strength and movement in his left knee due, in part, to a bone graft when
5  he was younger, and he has problems with his right knee due to overuse and favoritism.
6  Tr. at 53-56.  He testified that he can sit or stand less than fifteen minutes at a time, walk
7  for up to five or ten minutes at a time, and can lift less than 10 pounds.  Tr. at 55.  He
8  stated that he lays in bed most days until the afternoon because he is too stiff to move.
9  Tr. 59.  Plaintiff lives with his girlfriend, a step-son and stepdaughter, and his two
10 daughters, aged 3 months and 19-20 months.  Tr. at 45-46, 55-56.  He testified that he
11 cannot pick up his older daughter who weighs 23 pounds, his girlfriend takes care of the
12 kids because she is not currently working, and a babysitter took care of the kids before
13 that.  Tr. at 56, 58-60.  Plaintiff testified that he helps with dishes and cooking when he
14 can, but his girlfriend does most everything, and he gets frustrated and depressed because
15 he can't bend to take clothes out of the dryer or sweep or do anything that requires
16 twisting.  Tr. at 60.  He testified that he watches TV and goes to church and counseling
17 and does not use alcohol.  Tr. 57-58, 61.

18         The ALJ evaluated Plaintiff's testimony using the two-step analysis established by
19 the Ninth Circuit.  *See Smolen v. Chater*, 80 F.3d 1273, 1281 (9th Cir. 1996).  Applying
20 the test of *Cotton v. Bowen*, 799 F.2d 1403 (9th Cir. 1986), the ALJ determined that
21 Plaintiff's medically determined impairments could reasonably produce the alleged
22 symptoms.  Tr. at 31.  Given this conclusion, and because there is no evidence of
23 malingering, the ALJ was required to present "specific, clear and convincing reasons" for
24 finding Plaintiff not entirely credible.  *Smolen*, 80 F.3d at 1281.[6]  Plaintiff argues that the

25

26 [6] Defendant argues that the clear and convincing standard does not apply on the basis of the Ninth Circuit's en banc decision in *Bunnell v. Sullivan*, 947 F.2d 341, 345-46
27 (9th Cir. 1991), in which the Court of Appeals stated that to discredit a claimant's subjective complaints the ALJ must make findings "properly supported by the record"
28 that are "sufficiently specific to allow a reviewing court to conclude the adjudicator rejected the claimant's testimony on permissible grounds."  Doc. 16 at 13-14.  Defendant argues that subsequent cases that have articulated a "clear and convincing" standard are

ALJ failed to meet this burden. Doc. 13 at 18. The Court agrees.

The ALJ stated that there are a number of inconsistencies between Plaintiff's testimony and the record. Tr. at 31. These include that Plaintiff told providers at Horizon Human Services that he was able to complete all of his daily living activities on his own, cares for his daughter during the day, spends time with his girlfriend, plays video games, attends meetings and bible study at church, and enjoys being around people. Tr. at 31.

Of these activities, Plaintiff's reported ability to take care of all of his daily needs and to care for his infant daughter are clearly inconsistent with his testimony that he spends most of the day lying down and cannot care for himself or complete simple tasks around the house. *Compare* Tr. at 480 *with* Tr. at 59. It is not clear, however, when Plaintiff provided these accounts to Horizon. The only dated reports from Horizon were prepared on November 3, 2009, and August 25, 2009, and thus predate Plaintiff's hearing by more than 6 and 9 months. *See* Tr. at 460, 462. The Court cannot conclude that Plaintiff's differing responses regarding his daily functioning over an indeterminate span of time provide clear and convincing evidence that his testimony on May 26, 2010 was not credible.

The ALJ also found Plaintiff's testimony concerning his alcohol use a reason to question his credibility. Tr. 31. The ALJ cited to purported internal inconsistencies in the statements Plaintiff made to Horizon, noting that he reportedly stated that he had not used any substances for 8 years, but he also admitted to binging on alcohol every 3-4 months, using wine and beer as a last resort, and needing beer to relax. *Id.*; *see* Tr. at

---

not binding because only an en banc panel can overrule *Bunnell*. *Id.* at 14. The Court finds this argument unpersuasive. Subsequent cases have explained that an ALJ "may only find an applicant not credible by making specific findings as to credibility *and* stating clear and convincing reasons for each." *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 883 (9th Cir. 2006) (emphasis added); *see also Lingenfelter*, 504 F.3d at 1036. Thus, the cases applying the "clear and convincing" standard do not contradict or overturn *Bunnell*. Furthermore, numerous cases have applied the "clear and convincing" standard, and this Court is in no position to disregard them. *See, e.g.*, *Taylor v. Comm'r of Soc. Sec. Admin.*, 659 F.3d 1228, 1234 (9th Cir. 2011); *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009); *Lingenfelter*, 504 F.3d at 1036; *Orn*, 495 F.3d at 635; *Robbins*, 466 F.3d at 883; *Smolen*, 80 F.3d at 1281; *Dodrill v. Shalala*, 12 F.3d 915, 918 (9th Cir. 1993).

460, 462, 478.  The Court does not find this to be clear and convincing evidence that Plaintiff's testimony lacks credibility.  First, Plaintiff's reported statement that he had been clean from all substances for 8 years is not dated and it is not clear whether it was made before or after his dated admissions to turning to alcohol as a "last resort" and binging every 3-4 months.  Second, it appears that Plaintiff was not talking about alcohol, but controlled substances when he "reported that he experimented with substances in the past but has been clean from all substances for over 8 years."  Tr. at 478  This is supported by the fact that in the report dated August 25, 2009 – the same one in which Plaintiff reportedly admitted to binging on alcohol – Plaintiff reportedly stated that he had used Meth in his early 20's but went to a 28 day rehab program and has not used since.  Tr. 462.  The statements made in various Horizon reports over time, even if theoretically inconsistent, also do not provide clear and convincing evidence that Plaintiff was being untruthful or inconsistent in his testimony before the ALJ.  The ALJ asked Plaintiff a yes or no question about whether he used alcohol or Meth and did not ask him to elaborate about his past history or the last time he had done so.  Given that the hearing took place more than 6 and 9 months after Plaintiff reportedly told Horizon that he binged on alcohol every 3-4 months and used it to relax, the Court is not persuaded that his denial of use at the time evinces a lack of credibility.

The ALJ also cites to evidence that Plaintiff discontinued physical therapy as a reason for doubting the credibility of his symptoms.  Tr. at 31; *see* Tr. at 405.  Plaintiff was purportedly referred for 12 physical therapy sessions for his knee, the first of which took place on September 7, 2008.  Tr. at 423.[7]  Plaintiff points to evidence that he attended this and 11 more sessions, the last one of which took place on October 22, 2008, thus completing all 12 sessions.  Doc. 13 at 18; *see* Tr. at 407, 409, 413, 414, 415, 416, 418, 119, 420, 422, 423, 426.  The physical therapist filled out two separate discharge reports on November 17, 2008, the first of which relates to Plaintiff's knee diagnosis from Dr. Daggert and the second of which relates to Plaintiff's lower back diagnosis from

---

[7] The report for this session indicates that it was visit 1 of 12.  Tr. at 423.

- 13 -

Dr. Rooney. Tr. at 405, 406. The first report, referred to by the ALJ, notes that Plaintiff completed 9 appointments and missed 6 for a period of care beginning on September 15, 2008, and the second notes that Plaintiff had completed 2 appointments and missed 2 for a period of care beginning on September 30, 2008. Tr. at 405, 406. Plaintiff argues that these notations, compared with the record showing he had completed 12 sessions between September 7, 2008 and October 22, 2008, show that the physical therapist erred in tracking his visits. Doc. 13 at 18-19. Defendants do not address the apparent discrepancies between the physical therapist's discharge reports and the records. Although lack of follow-through on recommended treatment may be a reason for doubting a plaintiff's subjective pain testimony, the Court cannot conclude, given the apparent reporting discrepancies in this case, that the discharge report to which the ALJ points constitutes clear and convincing evidence that Plaintiff's testimony was not credible.

Finally, the ALJ noted that although Plaintiff has mental limitations with complex work and interacting with the public, he has otherwise retained sufficient work-related mental abilities to perform the work noted in the RFC. Tr. at 32-33. This has no bearing, however, on whether Plaintiff's testimony regarding his physical pain and limitations is credible. The ALJ stated that Plaintiff's pain and limitations are not fully corroborated by objective medical evidence, but this also is not a reason for discounting Plaintiff's subjective complaints. "Once a claimant produces objective medical evidence of an underlying impairment, an ALJ may not reject a claimant's subjective complaints based solely on lack of objective medical evidence to fully corroborate the alleged severity of pain." *Moisa v. Barnhart*, 367 F.3d 882, 885 (9th Cir. 2004).

In summary, although the ALJ points to specific reasons, such as apparent inconsistencies and discrepancies in the record, for doubting Plaintiff's testimony regarding the severity of his symptoms, these reasons do not hold up on review and fail on the whole to provide clear and convincing reasons for discounting Plaintiff's credibility.

## IV. Remedy.

The Court has the discretion to remand the case for further development of the record or for an award benefits. *See Reddick*, 157 F.3d at 728. In *Smolen*, the Ninth Circuit held that evidence should be credited and an action remanded for an immediate award of benefits when the following three factors are satisfied: (1) the ALJ has failed to provide legally sufficient reasons for rejecting evidence, (2) there are no outstanding issues that must be resolved before a determination of disability can be made, and (3) it is clear from the record that the ALJ would be required to find the claimant disabled were such evidence credited. 80 F.3d at 1292 (9th Cir. 1996); *see Varney v. Sec. of Health & Human Servs.*, 859 F.2d 1396, 1400 (9th Cir. 1988); *Swenson v. Sullivan*, 876 F.2d 683, 689 (9th Cir. 1989) (same); *Rodriguez v. Bowen*, 876 F.2d 759, 763 (9th Cir. 1989) ("In a recent case where the ALJ failed to provide clear and convincing reasons for discounting the opinion of claimant's treating physician, we accepted the physician's uncontradicted testimony as true and awarded benefits.") (citing *Winans v. Bowen*, 853 F.2d 643, 647 (9th Cir. 1988)); *Hammock v. Bowen*, 879 F.2d 498, 503 (9th Cir. 1989) (extending *Varney II*'s "credit as true" rule to a case with outstanding issues where the claimant already had experienced a long delay and a treating doctor supported the claimant's testimony).

The Court has found that the ALJ failed to provide legally sufficient reasons for rejecting the opinion of Plaintiff's treating physician, Dr. Rooney, and for discrediting Plaintiff's subjective testimony. There are no outstanding issues to be resolved before a disability determination may be made because the vocational expert's testimony in response to queries related to Dr. Rooney's assessments shows that the ALJ would be required to find Plaintiff incapable of any full time work and thus disabled if Dr. Rooney's opinion were credited as true. Additionally, the vocational expert testified based on Plaintiff's own testimony of his symptoms that he would not be able to perform any full time work. Tr. at 64. These findings are sufficient to support a remand for an award of benefits.

1  Defendant argues that it would be contrary to the Social Security Act to remand
2 for an award of benefits unless it has first been determined that a claimant is disabled.
3 Doc. 16 at 15-16.  Defendant cites *Strauss v. Comm'r of the Soc. Sec. Admin*, 635 F.3d
4 1135 (9th Cir. 2011), as recently holding that even if the ALJ erred, the "errors are
5 relevant only as they affect [the disability] analysis on the merits.  A claimant is not
6 entitled to benefits under the statute unless the claimant is, in fact, disabled, no matter
7 how egregious the ALJ's errors may be." *Strauss*, 635 F.3d at 1138 (citing *Briscoe ex*
8 *rel. Taylor v. Barnhart*, 425 F.3d 345, 357(7th Cir. 2005)).  But *Struass* did not involve
9 error with respect to the ALJ's disability determination on the merits.  Rather, it involved
10 the ALJ's failure to develop the record as required by a prior court order.  *Strauss*, 635
11 F.3d at 1137.  Thus, the district court in *Strauss* did not undertake to determine whether
12 claimant was entitled to benefits under the statute, nor did it credit as true evidence that
13 the ALJ had improperly excluded.  *Id.* at 1128.  Instead, the court remanded for an award
14 of benefits based solely on the ALJ's failure to follow the court's prior orders.  *Id.*  It was
15 in this context that the Ninth Circuit held that the district court may not remand for a
16 payment of benefits "without the intermediate step of analyzing whether, in fact, the
17 claimant is disabled." *Id.*

18  The procedural error the Court finds here, by contrast, is precisely the error that
19 the Ninth Circuit in *Strauss* confirmed requires remand for an award of benefits: one in
20 which the ALJ erred in discrediting evidence and, absent any outstanding issues to be
21 resolved, "it is clear from the record that the ALJ would be required to find the claimant
22 disabled were such evidence credited."  *Id.* (quoting *Benecke v. Barnhart*, 379 F.3d 587,
23 593 (9th Cir. 2004)).

24  Although Defendant states that the Commissioner disagrees with the credit as true
25 rule as usurping the agency's role in determining eligibility, the overwhelming authority
26 in this Circuit makes clear that the credit as true doctrine is mandatory.  *See Lester v.*
27 *Chater*, 81 F.3d 821, 834 (9th Cir. 1995); *Smolen*, 80 F.3d at 1292; *Reddick*, 157 F.3d at
28 729; *Harman v. Apfel*, 211 F.3d 1172, 1178 (9th Cir. 2000); *Moore v. Comm'r of Soc.*

*Sec.*, 278 F.3d 920, 926 (9th Cir. 2002); *McCartey v. Massanari*, 298 F.3d 1072, 1076-77 (9th Cir. 2002); *Moisa v. Barnhart*, 367 F.3d 882, 887 (9th Cir. 2004); *Benecke v. Barnhart*, 379 F.3d 587, 593-95 (9th Cir. 2004); *Orn v. Astrue*, 495 F.3d 625, 640 (9th Cir. 2007); *Lingenfelter v. Astrue*, 504 F.3d. 1028, 1041 (9th Cir. Oct. 4, 2007) ("[W]e will not remand for further proceedings where, taking the claimant's testimony as true, the ALJ would clearly be required to award benefits[.]") (citing *Varney*).[8]

Applying these cases, the Court concludes that the statements of disabling impairments by Dr. Rooney and Plaintiff's improperly rejected testimony should be credited as true, and, when so credited, require a remand for an award of benefits.

**IT IS ORDERED:**

1. Defendant's decision denying benefits is **reversed**.

2. The Clerk is directed to **remand** the case for an award of benefits.

Dated this 17th day of June, 2013.

_____
David G. Campbell
United States District Judge

---

[8] As the Court has stated on previous occasions, *see, e.g., Stevens v. Astrue*, No. CV11-1978-PHX-DGC, 2012 WL 2017947 at *9 n. 2 (D. Ariz. June 05, 2012), it too disagrees with the credit as true doctrine. The doctrine denies ALJs an opportunity to correct errors on remand and reach decisions based on a legally accurate evaluation of the record, and instead awards benefits without further review simply because the ALJ made procedural errors. The Court is bound, nonetheless, to follow Ninth Circuit precedent.